NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-964

APPROMED CORP.

vs.

THE DEHNER COMPANY, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, ApproMed Corp. (ApproMed), brought suit against the defendant, The Dehner Company, Inc. (Dehner), regarding a business dispute. Following a trial, ApproMed appeals from a final judgment in favor of Dehner. ApproMed argues that the trial judge erred in allowing a motion for a directed verdict on two of ApproMed's claims: conversion and breach of an oral contract.[1] We affirm.

---

[1] ApproMed's claims for misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing were submitted to a jury, which found in favor of Dehner. The trial judge likewise found in favor of Dehner on an additional claim for violation of G. L. c. 93A. ApproMed raises no arguments with respect to those claims on appeal.

Background.  In reviewing the allowance of a motion for a directed verdict, we recite the evidence in the light most favorable to ApproMed.[2]  See Parsons v. Ameri, 97 Mass. App. Ct. 96, 105 (2020).

ApproMed is in the business of providing merchandise to government agencies.  Dehner is in the business of manufacturing military-grade boots.  ApproMed wanted to work with Dehner to submit a bid to supply boots to the Massachusetts State Police.  To that end, the president of ApproMed, Oliver Udemba, contacted the president of Dehner, Jeffrey Ketzler, to discuss entering into a distributor agreement; such an agreement was a required part of the bid to the State Police.  On March 3, 2015, during a telephone call between the two, Ketzler said that he would "back [Udemba] up" and sent him an application to be a distributor of Dehner's boots.  Udemba returned the application to Ketzler.  Udemba also prepared an exclusive distributor agreement for Ketzler to sign.  However, Ketzler stated in an e-mail message to Udemba that he could not sign an exclusive distributor agreement.  Udemba then removed the exclusivity provision, at which point Ketzler, again through e-mail correspondence, raised other concerns, including one related to what ApproMed's

_____

[2] We note that ApproMed has not included in the record appendix the copies of any trial exhibits, but only the trial transcript.  Accordingly, our review is limited to the transcript.

2

discount on the boots would be, which cost $650 per pair. Ultimately, Ketzler did return an unsigned distributor agreement to Udemba, but it did not state what ApproMed's discount on the boots would be.

ApproMed submitted a bid of $779.56 per boot pair to the Massachusetts State Police, assuming that the cost to acquire the boots from Dehner would be the undiscounted amount of $650 per pair. Dehner, unbeknownst to Udemba at the time, submitted a bid of $650 per pair and won the contract.

Discussion. We review the grant of a motion for a directed verdict to determine

> "whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury could reasonably return a verdict in favor of the plaintiff, i.e., whether from the evidence it was possible to draw enough reasonable inferences to make out the elements of the plaintiff's case."

W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993).

We first address ApproMed's claim for conversion. "The elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment." Matter of Hilson, 448 Mass. 603, 611 (2007). ApproMed argues that Dehner converted ApproMed's

3

proprietary pricing information by using it to submit a lower bid.  We are not persuaded.

As a preliminary matter, there was no evidence that Dehner knew the amount that ApproMed planned to bid.  Udemba testified that he did not tell Ketzler either the amount that ApproMed would be bidding or how much ApproMed would be marking up the boots.[3]  ApproMed argues only that financial data can be a trade secret but does not (1) explain why its pricing information, specifically, qualified as a trade secret, or (2) provide any support for the proposition that, even if the pricing information did qualify as a trade secret, it could have been the subject of an action for conversion.  See Restatement (Second) of Torts § 242 (1965) (action for conversion lies with respect to intangible property only if intangible property was "merged in a document").  See also Blake v. Professional Coin Grading Serv., 898 F. Supp. 2d 365, 386 (D. Mass. 2012) ("a plaintiff is not entitled to recover for conversion of intangible property").  Accordingly, the argument is waived. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019); Toney v. Zarynoff's, Inc., 52 Mass. App. Ct. 554, 564 n.10 (2001).  In any event, Dehner's act of offering the State Police the price it is undisputed Dehner charged other

---

[3] Udemba first testified that he did tell Ketzler but then clarified that he misunderstood the question.

4

distributors is not a conversion of ApproMed's pricing.  The judge did not err by directing a verdict for Dehner.

We next address ApproMed's claim for breach of an oral contract.  To prevail on a claim for breach of contract, a plaintiff must demonstrate that (1) there was an agreement between the parties; (2) the agreement was supported by consideration; (3) the plaintiff was ready, willing, and able to perform his or her part of the contract; (4) the defendant committed a breach of the contract; and (5) the plaintiff suffered harm as a result.  See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016).  Concerning the first element, "[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement" (citation omitted).  Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 123 (2007).  Further, "[w]hile it is not necessary that every term of the agreement be specified with precision, '[t]he parties must . . . have progressed beyond the stage of "imperfect negotiation"'" (citation omitted).  Id.

ApproMed argues that the trial judge erred in concluding that any oral contract between the parties to "work together" was invalidated by the Statute of Frauds or the provisions of the Uniform Commercial Code.  We need not reach this issue because Udemba's own testimony demonstrates that the parties

5

never reached an agreement that amounted to an enforceable contract. Instead, the evidence supports a reasonable inference that, on March 3, they engaged in an initial conversation regarding working together to further Udemba's efforts in submitting a bid to the State Police. Udemba described the contract as follows:

> "That Dehner is going to back me up all the way for me to submit a bid offering his boots and he's going to provide me with all the specifications I need, and that he's going to support me to submit one bid by ApproMed Corp. offering boots sourced from Dehner."

However, after having the conversation which led Udemba to conclude he had such an agreement with Dehner, the parties negotiated, yet failed to agree to, key terms of an enforceable contract. For example, ApproMed's claim that it arrived at an oral contract with Dehner to "work together" is undermined by the parties' inability to agree to the distributor discount ApproMed would receive as well as Ketzler's subsequent refusal to sign the proposed distributor agreement prepared by Udemba.[4] This distributor agreement, according to Udemba, was "one of the

---

[4] Although Udemba testified that Ketzler told him that other distributors received a standard twenty-seven percent discount, or "cut," he conceded that Ketzler never explicitly offered ApproMed a twenty-seven percent discount. In fact, Udemba testified that he did not take into account a twenty-seven percent discount when he submitted the bid. Because Ketzler had not included this information in the final distributor agreement documents that they exchanged, the final agreement documents contained no pricing information.

most important elements" of their agreement because it was a necessary component of his bid to the State Police. Udemba further admitted that he needed Ketzler's signature on the distributor agreement in order "to bind him." However, after receiving the distributor agreement from Udemba, Ketzler said that the agreement contained "problems," and expressed reluctance to be bound by the proposed terms. By rejecting the terms of ApproMed's proposed distributor agreement, Ketzler clearly signaled that he had not intended to be bound by their initial oral discussion, but instead, reserved committing to material terms until the execution of a more formal agreement. Lambert, 449 Mass. at 123.

The parties' ongoing negotiations concerning material terms of an agreement demonstrate the parties had not previously entered into an enforceable oral contract. Accordingly, a jury could not have reasonably concluded the plaintiff established

that the parties formed an oral contract that the defendant later breached.  The judge properly directed out the claim.

<u>Judgment affirmed</u>.

By the Court (Henry, Hershfang & Smyth, JJ.[5]),

Clerk

Entered:  March 6, 2025.

---

[5] The panelists are listed in order of seniority.